DANIEL F. NUGENT, JR., & others[1] *vs.* TOWN OF WELLESLEY & another.

Norfolk.   January 18, 1980. — February 19, 1980.

Present: ARMSTRONG, ROSE, & KASS, JJ.

*Statute,* Acceptance, Revocation of acceptance. *Constitutional Law,* Home Rule Amendment. *Municipal Corporations,* Home rule, By-laws and ordinances, Board of public works. *Wellesley.*

There was no merit to a contention that the establishment of a board of public works in a town through the acceptance of G. L. c. 41, §§ 69C-69F, by the town's voters at large precluded the enactment, at the request of the town's representative town meeting acting under the Home Rule Amendment, of special legislation affecting the board's functions. [203-205]

---

[7] 5 Cons. Cred. Guide (CCH) par. 31,862 (1979).

[1] Nine other taxpayers of the town of Wellesley.

A town meeting's request to the Legislature for special legislation under the Home Rule Amendment need not contain the text of the desired legislation. [205]

CIVIL ACTION commenced in the Superior Court Department on October 2, 1978.

The case was heard by *Donahue, J.*

*Edward C. Donlon* for the plaintiffs.

*Albert S. Robinson,* Town Counsel, for the defendants.

KASS, J. Ten taxpayers challenge the manner in which Wellesley transferred to a natural resources commission certain powers and duties formerly vested in a board of public works. On cross-motions for summary judgment, judgment was entered in favor of the town. We affirm.

As a first step, the Wellesley town meeting,[2] sitting in special session on January 31, 1978, enacted a by-law establishing a natural resources commission of five members to be elected by ballot. At an adjourned session of the same special town meeting held February 13, 1978, the town voted to authorize its selectmen to petition the General Court for special legislation "to authorize the establishment and operation of the Natural Resources Commission as provided in Article 43 of the new Bylaws." By St. 1978, c. 555, § 4, the Legislature did authorize establishment of a natural resources commission in terms consistent with the town by-law, i.e. reposing in it "the powers and duties of conservation commissions and forest committees under the General Laws and the powers and duties (currently vested in the board of public works of the town) of park commissioners, tree wardens, moth superintendents and superintendents of insect pest control under the General Laws."

1. The first attack that the plaintiffs make on this transfer of functions from certain town agencies to another is that since the board of public works exists in Wellesley by reason of the acceptance in 1953 of the provisions of G. L.

---

[2] A representative town meeting.

c. 41, §§ 69C-69F,[3] by the voters of Wellesley at large, that board's functions can be altered only by affirmative action of the voters at large. The contention is without merit.

Under § 8 of art. 89 of the Amendments to the Constitution of the Commonwealth (the Home Rule Amendment) the Legislature has the power to enact special laws "on petition filed or approved by the voters of a city or town, or the mayor and city council, or other legislative body, of a city, or the town meeting of a town, with respect to a law relating to that city or town." As we observed in *Marino* v. *Town Council of Southbridge,* 7 Mass. App. Ct. 461, 464 (1979), an argument assailing as unconstitutional a procedure expressly provided for in the Constitution contains a fatal logical flaw. See also *Selectmen of Braintree* v. *Town Clerk of Braintree,* 370 Mass. 114 (1976), approving a town charter amendment by town meeting petition plus legislative action. That the voters at large originally accepted the statute establishing the board of public works does not require, as the plaintiffs contend, that the voters at large be involved either in the petition to the Legislature or in subsequent ratification of the act of the Legislature. Although a municipality may not, once it has accepted a general law, thereafter unilaterally rescind it (unless the statutory scheme by its terms provides for review or revocation of acceptance),[4] that acceptance is "subject to change . . . by subsequent action of the Legislature." *Brucato* v. *Lawrence,* 338 Mass. 612, 616 (1959). *McDonough* v. *Lowell,* 350 Mass. 214, 216 (1966). Moreover, the special act of the Legislature in this case begins with the words, "Notwithstanding any contrary provisions of the General Laws . . ." which negate at the outset the inferences the plaintiffs try to draw from G. L. c. 41, § 69C-69F. Nor has the

---

[3] This statutory scheme, inserted by St. 1953, c. 101, § 1, authorizes towns to establish a board of public works and describes the organization, duties, and manner of election of such a board.

[4] General Laws c. 41, § 69F, for example, describes the manner in which a town may revoke acceptance of the board of public works statute without intervention of the Legislature.

principle contained in the *Brucato* and *McDonough* decisions lost force by reason of the adoption of the Home Rule Amendment. *Chief of Police of Dracut* v. *Dracut,* 357 Mass. 492, 496-498 (1970). This is not the first time that it has been urged on behalf of the board that the town's acceptance of G. L. c. 41, §§ 69C-69F, cast a special aura around the board, and that the argument has been found wanting. *Board of Pub. Works of Wellesley* v. *Selectmen of Wellesley,* 377 Mass. 621, 625-628 (1979).

2. The plaintiffs' second attack is that the town meeting's petition to the Legislature was deficient because it did not contain the text of the legislation which the town wished the General Court to enact. It was not necessary that the petition do so. "If a municipality wishes to write a 'blank check' to the Legislature, specifying only the scope of its public objective, the purpose of the Home Rule Amendment — that a special act relating to a single municipality be locally initiated — is fully served." *Newell* v. *Rent Bd. of Peabody,* 378 Mass. 443, 448 (1979).

*Judgment affirmed.*